UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THEODORE STAIR, Individually,
THEODORE STAIR, an Officer, Director and
Shareholder of American Virgin Enterprises, Ltd.,
Derivatively on behalf of American Virgin
Enterprises, Inc. and THEODORE STAIR, a Member
of Sirius Development, LLC, derivatively on behalf
of Sirius Development, LLC,

Case No.     cv 2012

**COMPLAINT**

Plaintiffs,

-against-

RORY CALHOUN,
JOHN HANRAHAN,
ROBERT E. PARELLA
and
H. LINWOOD GILBERT,

BROWN, M. J.

Defendants.

Plaintiff, THEODORE STAIR, individually and derivatively, by his undersigned attorney, complaining of the defendants, alleges as follows:

## PARTIES

1. Plaintiff, Theodore Stair ("Stair") is a natural person residing at 310 Michelle Lane, Rocky Point, North Carolina.

2. Upon information and belief, at all times herein relevant, Defendant Rory Calhoun ("Calhoun") was and still is natural person and an attorney at law licensed in the state of New York, residing at 45 Maple St., Garden City, New York and at 11-B-2 (6006) Smith Bay Estates, St. Thomas, Virgin Islands.

3. Upon information and belief, at all times herein relevant, Defendant John

Hanrahan ("Hanrahan") was and still is a natural person residing at 9 Terry Place, Riverhead, New York.

4. Upon information and belief, at all times herein relevant, Defendant Robert E. Parella ("Parella") was and still is a natural person and an attorney at law licensed by the State of New York and residing at 118 Outlook Terrace, Roslyn Heights, New York.

5. Upon information and belief, at all times herein relevant, Defendant H. Linwood Gilbert ("Gilbert") was and still is a natural person residing in the State of Florida and maintaining an address for the conduct of his business at 810 S. Sterling Avenue, Tampa, Florida.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this Action pursuant to 28 USC §§1332, since the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and since the citizenship of the parties is diverse, to wit, Plaintiff is a citizen of the State of North Carolina and the Defendants are citizens of the States of New York and Florida and of the territory of the U.S. Virgin Islands.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

## BACKGROUND FACTS APPLICABLE TO ALL CLAIMS

**A.** *Formation, Financing and Control of AVE-1987*

8. On or about May 19, 1987, American Virgin Enterprises, Ltd. ("AVE-1987") was established as a New York corporation with its principle place of business in Garden City, Nassau County, New York.

2

9. The shareholders and officers of AVE-1987 were as follows:

| Name | Shares | Office |
|---|---|---|
| Theodore Stair | 34 | President |
| William Childs | 34 | Vice President |
| Rory Calhoun | 34 | Treasurer |
| Michael DiRaimondo | 12 | Secretary |
| Dr. Peters | 2 | |
| Rockwell Marsh | 1 | |
| Charlene Vaughn | 1 (non-voting) | |

10. Calhoun and Hanrahan were members of the Board of Directors of AVE-1987.

11. At its inception, Stair was the record owner of 29% of the issued and outstanding voting shares of AVE-1987. At its inception, Stair, together with William Childs ("Childs") and Michael DiRaimondo ("DiRaimondo"), owned 68.37% of the issued and outstanding voting shares of AVE-1987.

12. Stair, Childs and Hanrahan each contributed capital to AVE-1987.

13. Stair and Calhoun were employed by AVE-1987 and performed valuable services for AVE-1987.

B. *The Business of AVE-1987*

14. The stated objective of AVE-1987 was development of a resort and marina in Coral Bay, St. John, US Virgin Islands (the "Project").

15. In furtherance of its objective, AVE-1987 leased from the Virgin Islands Port Authority ("VIPA") undeveloped real property more particularly described as Parcels 7, 10 and 10-E, Estate Emmaus, Coral Bay, St. John, Virgin Islands (the "Land").

3

16. The Project proceeded until in or around 1994, when it was stalled as a result of legal action brought by the Moravian Church (the "Church") against the Government of the Virgin Islands, the Virgin Islands Port Authority ("VIPA") and AVE-1987 (the "Church Litigation").

17. Through the Church Litigation, the Church alleged that the Church, and not the VIPA, owned the Property and that AVE-1987's lease with the VIPA was a nullity. Therefore, the Church sought to quiet title to the Property being developed by AVE-1987.

18. AVE-1987 interposed claims in the Church Litigation against the VIPA and the Church in an effort to uphold the Lease or obtain compensation for AVE-1987's purported leasehold interest.

C. *Dissolution and Secret Re-Incarnation of AVE-1987*

19. Unbeknownst to Stair, on or about March 24, 1993, AVE-1987 was administratively dissolved by proclamation of the New York Secretary of State in accordance with the procedures set forth in NY Tax Law §203-a.

20. Calhoun did not seek reinstatement of AVE-1987. Instead, on or about May 8, 2001, unbeknownst to Stair and without seeking or obtaining authorization from Stair or the other shareholders of AVE-1987, Defendant Calhoun caused a Certificate of Incorporation of a newly formed entity also with the name American Virgin Enterprises, Ltd. ("AVE-2001") to be filed with the Secretary of State of the State of New York.

21. Notwithstanding Stair's position as president of AVE-1987, Stair did not learn of the 1993 dissolution of AVE-1987 until in or around April 2001.

22. When confronted by Stair concerning the dissolution of AVE-1987, Calhoun, a co-fiduciary and an attorney, persuaded Stair that the dissolution was insignificant. Calhoun

4

later mis-represented to Stair that AVE-1987 was merely "dissolved for inactivity" in or around 1997, when, in fact, AVE-1987 was administratively dissolved on March 24, 1993, for failure to comply with its franchise tax obligations.

23. Upon information and belief Calhoun's untrue and fraudulent statements to Stair concerning the dissolution of AVE-1987 were made in an order to persuade Stair to ratify the formation of AVE-2001, which Calhoun would be able to control.

24. Without the knowledge of Stair or the other AVE-1987 shareholders, Defendant Calhoun made the following statements and representations within the documents filed with the New York Secretary of State:

  a. That the principle office of AVE-2001 was located at "45 Maple Street, Garden City, New York;"

  b. That the address to which the Secretary of State should forward any process accepted for service upon AVE-2001 was "Theodore Stair, Post Office Box 594, Cutchogue, New York;"

  c. That the Chief Executive Officer of AVE-2001 was Rory Calhoun, 45 Maple St., Garden City, New York.

  d. That Stair, Hanrahan and Calhoun were designated as interim officers of AVE-2001 to serve until the election of officers at the initial meeting of the Shareholders.

  e. That Calhoun, Stair and Hanrahan each held a 33-1/3 % interest in AVE-2001.

### D. *The November 2001 Meeting*

25. On November 24, 2001, at Calhoun's behest, Stair met with Calhoun and Hanrahan at 45 Maple Street, Garden City, New York (the "November 2001 Meeting"). The intended purpose of the November 2001 Meeting was not disclosed in advance.

26. The business transacted at the November 2001 Meeting was characterized in corporate documents as both (a) the "Final Meeting of the Directors" of AVE-1987, and (b) the "First Meeting of the Board of Directors" of AVE-2001.

27. Upon information and belief, no meeting of the Shareholders of AVE-1987 was called and notice of the November 2001 Meeting was never transmitted to Childs, DiRaimondo, Peters, Marsh and/or Vaughn.

28. During the November 24, 2001 meeting, Calhoun made the following representations to Stair:

a. It would be too expensive to resurrect and reinstate AVE-1987;

b. Reinstatement of AVE-1987 may not be possible;

c. It was cheaper to form a new corporation utilizing the same name;

d. Formation of AVE-2001 was a legally acceptable alternative to reinstatement of AVE-1987, even though AVE-1987's outstanding tax obligation would remain unsatisfied;

e. Stair's managerial and financial stake in the Project would remain as originally set up in AVE-1987; and

f. Childs, DiRaimondo and the other stockholders of AVE-1987 would be "taken care of."

29. All of the foregoing statements were false and were made with the fraudulent intent to induce Stair to ratify the formation of AVE-2001 in reliance upon those statements.

30. In fact, Calhoun and Hanrahan knew and intended that, upon ratification of AVE-2001, Calhoun and Hanrahan would always vote as a block, usurping control of the corporation, which would ultimately rest with Calhoun.

31. One of the actions ratified at the November 2001 Meeting was the appointment of Calhoun as AVE-2001's counsel, with unlimited authority to unilaterally negotiate, litigate,

settle, or/and adjudicate all matters of the corporation

32. All actions taken, participated in, consented to and/or ratified by Stair at the November 2001 Meeting were in reliance upon Calhoun's representations. Had Stair known the truth, he would not have consented.

33. At the November 2001 Meeting, the items of business purportedly transacted included:

a. Ratification of the succession by AVE-2001 to the business and assets of AVE-1987;

b. Election of officers of AVE-2001;

c. Appointment of directors of AVE-2001;

d. Issuance of shares of AVE-2001.

34. As a result of the sham actions taken at the November 2001 Meeting, the shareholders and officers of AVE-2001 were as follows:

| Name | Shares | Office |
| --- | --- | --- |
| Theodore Stair | 34 | VP/Treasurer |
| John Hanrahan | 34 | Secretary |
| Rory Calhoun | 34 | President |
| Michael DiRaimondo | 0 | |
| William Childs | 0 | |
| Charlene Vaughn | 0 | |
| Rockwell Marsh | 0 | |
| Dr. Peters | 0 | |

35. Calhoun and Hanrahan were each members of the Board of Directors of AVE-2001.

36. As of November 24, 2001, the following changes in the internal management of the Project occurred:

7

a. The interests of Childs and DiRaimondo were eliminated.

b. Hanrahan, who was not a shareholder of AVE-1987, became the record owner of 33-1/3% of the issued and outstanding voting shares of AVE-2001.

c. Calhoun became the President of AVE-2001 and was employed by AVE-2001 as its Counsel.

d. Stair became record owner of 33-1/3% of the issued and outstanding voting shares of AVE-2001, an ownership increase which was meaningless in the realm of management due to the elimination of Childs' and DiRaimondo's interests.

37. As a consequence of the elimination of Childs' and DiRaimondo's votes and the addition of Hanrahan's vote, was given full authority to "negotiate, litigate, settle, or/and adjudicate all matters of the corporation, including, but not limited to, the pending dispute & litigation regarding the marina project in Coral Bay, St. John, USVI & all issued related thereto."

### E. *Formation of Sirius Development LLC and Settlement of the Church Litigation*

38. On or about August 29, 2005, unbeknownst to Stair, Sirius Development LLC ("Sirius") was formed as a limited liability company under the laws of the U.S. Virgin Islands, with its principle office designated as #8 Norre Gade, 1st Floor, St. Thomas, Virgin Islands.

39. Upon information and belief, in or around late 2005 or early 2006, Calhoun, in purported exercise of the authority granted to him by the management of AVE-2001, and without consultation with or notification to Stair, entered into a settlement with the VIPA (the "Settlement").

40. The Settlement was structured in a manner contrary to the interests of AVE-1987, AVE-2001 and the shareholders of AVE-1987, advancing only of the personal financial interests of Calhoun and Hanrahan.

8

41. Upon information and belief, on or about January 23, 2006, in a transaction related, directly or indirectly, to the Settlement, Sirius entered into a lease with the Church whereby Sirius leased from the Church for a 99-year term the Property which was previously leased to AVE-1987 by the VIPA and which was central to the Project and to the disputes raised in the Church Litigation.

42. The foregoing was accomplished by Calhoun even though AVE-1987 was the named plaintiff and a party in interest in the Church Litigation, and even though Sirius was not a party to the Church Litigation.

43. Notice of the lease to Sirius or of the terms of any settlement of the Church Litigation were neither transmitted to nor received by Stair.

44. Upon information and belief, unbeknownst to Stair, Hanrahan and Calhoun caused the transfer of AVE-1987's and/or AVE-2001's interest in the Church Litigation and in the Property to Sirius.

45. Upon information and belief, an Operating Agreement for Sirius was executed on or about May 4, 2006, which date was nearly nine (9) months after formation of Sirius and nearly four (4) months after Sirius entered into a lease for Property.

46. At that time, Stair did not know about the formation of Sirius or the preparation of its Operating Agreement, all of which were concealed from Stair by Calhoun and Hanrahan.

47. The Operating Agreement provides, among other things:

a. Sirius's members are Calhoun, Hanrahan, Gilbert, Parella and Stair;

b. Calhoun was designated "Managing Member;"

c. Calhoun, as Managing Member, was vested with "full and complete authority, power and discretion to manage and control the business, affairs and properties of [Sirius], to

9

make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of [Sirius's] business;"

d. Membership Units in Sirius were distributed as follows:

| Name | Voting Units |
|---|---|
| Calhoun | 29 |
| Hanrahan | 19 |
| Gilbert | 19 |
| Parella | 19 |
| Stair | 14 |

e. Membership interests in Sirius were stated to have been determined based upon "the contribution of the Ground Lease with the Moravian Church and related out of pocket expenditures incurred."

f. Members were restricted from obtaining additional Membership Units and "preemptive rights" were waived.

48. No Membership Units were issued to Childs, DiRaimondo, Peters, Marsh or Vaughn.

49. Stair did not execute Sirius' Operating Agreement.

50. Under the Sirius Operating Agreement, Stair's ownership interest in the Project was reduced to 14%, a fact which Stair learned on or about May 6, 2006 when Hanrahan presented him with a copy of Sirius' Operating Agreement.

51. Until May 6, 2006, Stair was not aware of the existence of Sirius, the content of the Operating Agreement, or the reduction in his ownership interest.

52. On or about May 7, 2006, Hanrahan telephoned Stair and stated to him that AVE-2001 was administratively dissolved by New York State for failure to pay taxes. Hanrahan knew the statement to be false and made it with the intent that Stair rely on it and accept the

diminished percentage of the Project allocated to him and not take any action against defendants.

E. *Formation of T-Rex St. John*

53. Upon information and belief, Calhoun, Hanrahan, Gilbert and Parella thereafter engaged in negotiations with T-Rex Capital LLC ("T-Rex"), a Connecticut limited liability company, for the purpose of obtaining financing for the Project.

54. Upon information and belief, and unbeknownst to Stair, T-Rex St. John LLC ("T-Rex SJ") was established in or around 2006 as a U.S. Virgin Islands limited liability company, with a business address of 8 Norre Gade, Suite 1, Charlotte Amalie, St. Thomas, U.S. Virgin Islands 00802.

55. Upon information and belief, T-Rex SJ was established for the purpose of assuming responsibility for development of the Project.

56. Upon information and belief, T-Rex and Sirius each acquired a 50% interest in T-Rex SJ and, unbeknownst to Stair, the leasehold for the Property was transferred from Sirius to T-Rex SJ.

57. As a result of the foregoing transactions, Stair's ownership interest in the Project was further reduced to 7%.

## COUNT I
### *(Brought Against Calhoun and Hanrahan Under NYBCL §§ 626 & 720)*

58. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein at length.

59. Calhoun and Hanrahan, as Directors and Officers of AVE-1987, owed a duty to the shareholders of AVE-1987 and AVE-2001, including Stair, and to the respective corporations, to perform their duties in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

11

60. Calhoun and Hanrahan failed to exercise good faith in the performance of their duties as directors and officers of AVE-1987 and AVE-2001 and engaged in misconduct *vis-à-vis* AVE-1987, AVE-2001 and their respective shareholders in that they, among other things,

a. Allowed AVE-1987's administrative dissolution by the Secretary of State;

b. Unilaterally extinguished the equity interests of Childs, DiRaimondo, Peters, Marsh and Gilbert;

c. Failed to provide notice of meetings to the Shareholders;

d. Caused the assets and business of AVE-1987 to be transferred to AVE-2001;

e. Caused the formation of AVE-2001 without regard for legal requirements or prohibitions;

f. Caused the equity interests in AVE-2001 to be distributed in a manner which was contrary to and inconsistent with the equity distribution of its predecessor, AVE-1987;

g. Issued equity shares in AVE-2001 to Hanrahan;

h. Structured the management of AVE-2001 so that Calhoun was personally vested with full, unbridled authority to negotiate, litigate, settle, and adjudicate all matters of the corporation, including, but not limited to, the ongoing Church Litigation;

i. Caused the assets and business of AVE-2001 to be transferred to Sirius; and

j. Otherwise conducted the respective businesses of AVE-1987 and AVE-2001 in manners which were contrary to and inconsistent with the corporate By-Laws and the laws of the State of New York.

61. By virtue of the acts and practices more particularly described above, Stair's interest in the Project has been reduced and diluted in amounts to be determined at trial but reasonably believed to exceed the sum of $19,000,000.00.

62. Since AVE-1987 and AVE-2001 were under the *de facto* control of Calhoun and since Calhoun, Hanrahan and Stair constituted the entire of the Board of Directors of AVE-2001, Stair reasonably concluded that any demand made upon the Board to commence this derivative suit would be futile.

63. Stair, for himself and in behalf of AVE-1987 is entitled to a judgment compelling Calhoun and Hanrahan to account for their official conduct including:

   a. neglect of, failure to perform, and other violations of duties in the management and disposition of corporate assets of AVE-1987 committed to his charge; and

   b. acquisition by Calhoun and Hanrahan, transfer to others, and loss or waste of corporate assets due to their respective neglect of, failure to perform, and other violations of their duties.

64. Stair, for himself and in behalf of AVE-2001 is entitled to a judgment compelling defendants Calhoun and Hanrahan to account for their official conduct including:

   a. their neglect of, failure to perform, and other violations of their duties in the management and disposition of corporate assets of AVE-2001 committed to their charge; and

   b. the acquisition by Calhoun and Hanrahan, transfer to others, and loss or waste of corporate assets due to their respective neglect of, failure to perform, and other violations of their duties.

65. Stair, for himself and in behalf of AVE-1987 and AVE-2001 is entitled to a judgment setting aside and avoiding the unlawful conveyances, assignments and transfers of corporate assets.

66. Stair is also entitled to a money judgment sufficient to compensate him for his

losses resulting from the defendants' conduct.

## COUNT II

### *(Against Calhoun, Hanrahan, Parella and Gilbert Under VI STT. 13 §§ 1410 and 2101)*

67. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein at length.

68. As Manager of Sirius, Calhoun was duty bound, among other things, to:

a. Account to Sirius and to hold as trustee for it any property, profit, or benefit derived in the conduct of Sirius's business or derived from his use of the company's property, including the appropriation of a company's opportunity;

b. Refrain from dealing with Sirius in the conduct its business as or on behalf of a party having an interest adverse to Sirius;

c. Refrain from competing with Sirius in the conduct of its business;

d. Refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law; and

e. Discharge his duties to Sirius and its Members consistently with the obligation of good faith and fair dealing.

69. Upon information and belief, Parella, Gilbert and Hanrahan assisted Calhoun, acted in concert with him, and undertook management functions at the behest of, and subject to the control and supervision of, Calhoun.

70. Defendants Parella, Hanrahan and Calhoun breached their duties to Sirius and to its Members in that, among other things, they:

a. Caused Sirius to become transferee of AVE-1987's and/or AVE-2001's interest in the Church Litigation and in the Property;

b. Caused Sirius to enter into a lease with the Church whereby Sirius leased the Property

   from the Church for a 99-year term;

c. Concealed form Stair and from the other Original Shareholders the facts concerning the formation of Sirius and the transfer of property to Sirius;

d. Concealed from Stair and from the other Original Shareholders the facts concerning the Lease;

e. Failed to issue any membership units to the Other Founding Shareholders;

f. Surreptitiously reduced Stair's interest in the Project.

71. By virtue of the acts and practices more particularly described above, Stair's interest in the Project has been reduced and diluted in amounts to be determined at trial but reasonably believed to exceed the sum of $19,000,000.00.

72. Since Sirius was at all times controlled by defendant Calhoun with the assistance and complicity of defendants Hanrahan and Parella, Plaintiff reasonably concluded that any demand made upon the Management to commence this derivative suit would be futile.

73. Stair, in his own behalf and in behalf of Sirius is entitled to a judgment compelling the defendants to account for their official conduct including:

a. Their neglect of, failure to perform, and other violations of their duties in the management and disposition of assets of Sirius committed to their charge; and

b. The acquisition by the defendants, transfer to others, and loss or waste of Sirius's assets due to their respective neglect of, failure to perform, and other violations of their duties.

74. Stair, in his own behalf and in behalf of Sirius is entitled to a judgment setting aside and avoiding the unlawful conveyances, assignments and transfers of Sirius's assets to Calhoun, Hanrahan, Parella and Gilbert.

75. Stair is also entitled to a money judgment sufficient to compensate him for his

losses resulting from the defendants' conduct.

## COUNT III
### *(Against Calhoun and Hanrahan for Common Law Fraud)*

76. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein at length.

77. The foregoing acts, practices and conduct constitute fraud under the laws of the State of New York and the territory of the Virgin Islands, in that the defendants, independently and in concert with one another, misrepresented material facts to Stair.

78. Defendants' misrepresentations were intentional, and done with the intent of diminishing Stair's monetary interest in the Project, usurping control of the project and establishing for themselves expanded monetary interests. Such misrepresentations were also intended to induce Stair to agree to and to ratify corporate acts which the defendants knew or should have known were contrary to law.

79. Defendants acted with a callous disregard for the truth and accuracy of their representations to Stair and of their collective and individual duties to Stair as fiduciaries.

80. Stair relied upon the representations, misrepresentations and assurances of these defendants to his damage and detriment.

81. By virtue of the foregoing fraud, Stair has been damaged in the amount of $19,000,000.00 and is entitled to equitable rescission of acts taken at the November 2001 Meeting.

## COUNT IV
### *(Against Calhoun and Parella for Attorney Malpractice)*

82. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein at length.

83. The acts and practices complained of constitute attorney malpractice on the parts of Defendants Calhoun and Parella.

84. As a result thereof, Stair has been damaged in the amount of $19,000,000.00.

**WHEREFORE,** Plaintiff demands judgment as follows:

**A. On Count I:**

(a) Awarding judgment compelling defendants Calhoun and Hanrahan to account for their official conduct including:

(i) their neglect of, failure to perform, and other violations of their duties in the management and disposition of corporate assets of AVE-1987 and AVE-2001 committed to their charge; and

(ii) the acquisition by Calhoun and Hanrahan, transfer to others, and loss or waste of corporate assets due to their respective neglect of, failure to perform, and other violations of their duties;

(b) Awarding judgment setting aside and avoiding the unlawful conveyances, assignments and transfers of corporate assets; and

(c) Awarding a money judgment sufficient to compensate him for his losses resulting from the defendants' conduct, believed to equal or exceed the sum of $19,000,000.00.

**B. On Count II:**

(a) Awarding judgment compelling the defendants to account for their official conduct including:

(i) Their neglect of, failure to perform, and other violations of their duties in the management and disposition of assets of Sirius committed to their charge; and

(ii) The acquisition by the defendants, transfer to others, and loss or waste of

Sirius's assets due to their respective neglect of, failure to perform, and other violations of their duties.

(b) A judgment setting aside and avoiding the unlawful conveyances, assignments and transfers of Sirius's assets to Calhoun, Hanrahan, Parella and Gilbert.

(c) A money judgment sufficient to compensate him for his losses resulting from the defendants' conduct, believed to equal or exceed the sum of $19,000,000.00.

**C. On Count III:**

(a) A money judgment sufficient to compensate plaintiff for his losses resulting from the defendants' conduct, believed to equal or exceed the sum of $19,000,000.00; and

(b) Rescission of all acts performed by Stair in reliance upon the defendants' misrepresentations and omissions.

**D. On Count IV:**

(a) a money judgment sufficient to compensate Stair for his losses resulting from the defendants' conduct, believed to equal or exceed the sum of $19,000,000.00.

Dated: Bridgeport, Connecticut
       December 12, 2012

SUSAN SCHNEIDERMAN
*Attorney for Plaintiff*
By: _____
    Susan Schneiderman
496 W. McKinley Ave
Bridgeport, CT 06604
(203) 570-4290
(866) 569-3334 (fax)
sschneiderman@optonline.net