UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THEODORE STAIR, individually, THEODORE
STAIR, an Officer, Director and Shareholder of
American Virgin Enterprises, Ltd., derivatively on
behalf of American Virgin Enterprises, Inc., and
THEODORE STAIR as a Member of Sirius
Development, LLC, derivatively on behalf of
Sirius Development, LLC,

                    **REPORT &**
                    <u>**RECOMMENDATION**</u>
                    CV 12-6121 (SJF) (SIL)

                        Plaintiffs,

        -against-

RORY CALHOUN, JOHN HANRAHAN,
ROBERT E. PARELLA, and H. LINWOOD
GILBERT,

                       Defendants.
---------------------------------------------------------------X
**LOCKE, Magistrate Judge:**

      This diversity action was commenced by Plaintiffs Theodore Stair individually, as an

officer, director and shareholder of American Virgin Enterprises, LTD., derivatively on behalf of

American Virgin Enterprises, Inc., and as a member of Sirius Development, LLC, derivatively on

behalf of Sirius Development, LLC[1] alleging various violations of New York state and U.S. Virgin

Islands law against individual Defendants Rory Calhoun, John Hanrahan, Robert E. Parella, and

H. Linwood Gilbert.  Defendants Calhoun, Hanrahan, and Parella (collectively, "Defendants")

have answered the complaint while Defendant Gilbert has not answered or otherwise appeared.

Before the Court on referral from the Honorable Sandra J. Feuerstein is Defendants' motion for

partial summary judgment on the grounds of expiration of the statute of limitations and insufficient

service of process.  Docket Entry ("DE") [45].  For the reasons set forth below, it is recommended

---

[1] Although Stair is technically named as a party in three different roles, he is referred to in the singular as
"Stair" or "Plaintiff."

that the motion be denied as to Defendants Hanrahan and Parella, and granted as to Defendant

Calhoun.

All appearing parties are currently proceeding *pro se*.  Plaintiff was represented by counsel

when the case was filed, but that attorney was subsequently terminated over a year after this action

commenced, and Stair elected to proceed *pro se*.  In addition, it should be noted that Defendants

Calhoun and Parella are attorneys and, according to the complaint, are licensed to practice in the

state of New York.

## **BACKGROUND**

This is the second case filed in this Court regarding the same underlying transactions.  The

complaints in this action and the first action, CV 07-3906 (the "First Action"), assert the same four

causes of action against some or all Defendants –violations of New York Business Corporation

Law, N.Y. BUS. CORP. LAW §§626 and 720, Virgin Islands law, V.I. CODE ANN. tit. 13, §§1410

and 2101, common law fraud, and attorney malpractice.

The factual allegations and nature of the substantive claims are not relevant to the current

motion and need not be repeated in great detail.  In short, Stair, Calhoun, and Hanrahan were

officers and/or board members of American Virgin Enterprises, Ltd. ("AVE1"), a New York

corporation formed in 1987.  Compl. ¶¶ 8-10.  Stair was AVE1's President and held 29% of the

voting shares.  *Id.* at ¶¶9, 11.  The objective of AVE1 was "development of a resort and marina"

in the Virgin Islands.  *Id.* at ¶14.  AVE1 leased real property in the Virgin Islands from the Virgin

Islands Port Authority ("Port Authority").   *Id.* at ¶15.  In or around 1994, a local church ("the

Church") commenced an action against the Virgin Islands government, the Port Authority, and

AVE1, alleging that the Church owned the property leased to AVE1.  *Id.* at ¶¶16-17.

Allegedly without Stair's knowledge, however, AVE1 had been administratively dissolved by proclamation of the New York Secretary of State in 1993. *Id.* at ¶19. In 2001, Calhoun, also without Stair's knowledge, filed a Certificate of Incorporation for a new entity named American Virgin Enterprises, Ltd. ("AVE2"). *Id.* at ¶20. According to the complaint, Calhoun made numerous misrepresentations to Stair regarding both the dissolution of AVE1 and the incorporation of AVE2. *Id.* at ¶¶22-24. Calhoun allegedly made false statements to Stair with the intent of inducing Stair to ratify the formation of AVE2. *Id.* at ¶28. Although his share and position was changed, Stair remained a shareholder and officer. *Id.* at ¶34. He held the position of VP/Treasurer and held a one-third interest in AVE2, *id.* at ¶¶ 24(c), 34m, but Calhoun was appointed as AVE2's counsel "with unlimited authority to unilaterally negotiate, litigate, settle, or/and adjudicate all matters of the corporation." *Id.* at ¶31.

In August 2005, again unbeknownst to Stair, Sirius Development LLC ("Sirius") was formed in the U.S. Virgin Islands as a limited liability company. *Id.* at ¶38. In late 2005 or early 2006, Calhoun, on behalf of AVE2 and without notification to Stair, entered into a settlement with the Port Authority that was structured in a manner contrary to corporate interests and designed to advance the personal financial interests of Calhoun and Hanrahan. *Id.* at ¶¶39-40. On or about January 23, 2006, in a transaction directly or indirectly related to the Port Authority settlement, Sirius entered into a 99-year lease agreement with the Church for the property that was previously leased to AVE1 and that was the subject of litigation brought by the Church. *Id.* at ¶41.

On or about May 4, 2006, an Operating Agreement for Sirius was executed. Stair did not know about the formation of Sirius or the preparation of the Operating Agreement, and he did not execute it. *Id.* at ¶¶45-46, 49. Stair was designated as a Member of Sirius, but his ownership interest in the Project was reduced to 14%. *Id.* at ¶¶47(d), 50. Through the formation of yet

3

another company, T-Rex Capital LLC, Stair's ownership interest was further reduced to 7%. *Id.* at ¶¶53-57.

**Resolution of the First Action, CV 07-3906**

The First Action was litigated for several years, but was ultimately dismissed for lack of subject matter jurisdiction as Stair was found to be domiciled in New York, not North Carolina, at the time the case was filed, thus defeating diversity. The timing of the dismissal is germane to the current dispute. Judge Bianco issued his oral decision granting the motion to dismiss on June 18, 2012. The Minute Entry states that the "[m]otion to dismiss for lack of Jurisdiction is granted as stated on the record." CV 07-3906, DE [126]. On July 2, 2012, Judge Bianco issued a short written Order that stated in its entirety that "[f]or the reasons set forth on the record on June 18, 2012, IT IS HEREBY ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk of the Court shall enter judgment accordingly and close the case." CV 07-3906, DE [127]. That Order was entered on July 5, 2012. Judgment dismissing the complaint without prejudice was ordered on July 6, 2012 and entered on July 10, 2012. CV 07-3906, DE [128].

**Commencement of the Current Action**

On December 13, 2012 with his domicile apparently established in North Carolina,[2] Plaintiff commenced the instant action asserting the same four claims. The complaint was filed on Plaintiff's behalf by attorney Susan Schneiderman. Defendants were purportedly served between December 15 and 18, 2012, and each Defendant filed an answer in early January 2013. Defendants, who were represented by counsel in the First Action, appeared *pro se* in the current action.

---

[2] Defendants have not challenged Stair's North Carolina domicile in the current motion papers.

4

Magistrate Judge Gary Brown conducted settlement conferences in March and May, 2013, *see* Minute Entries DE [11] & [13], but no agreement was reached.  By Order dated May 6, 2013, Magistrate Judge Brown certified discovery as closed and directed the parties to commence dispositive motion practice by June 5, 2013.  Minute Entry, DE [13].   Defendants timely commenced that practice by requesting a pre-motion conference with Judge Bianco.  *See* DE [15]. Judge Bianco waived the requirement of a conference and set a briefing schedule that required the motions to be fully briefed by August 21, 2013. *See* Order of 6/12/13, DE [16].

By letter dated August 5, 2013, Stair requested an extension of time to respond to the motion, stating that he was "currently without counsel" and expressing his "difficulty in communicating with my past attorney Susan Schneiderman." Ltr., DE [18].  Judge Bianco granted Plaintiff's motion, held the briefing schedule in abeyance, and directed Plaintiff to provide an update on obtaining new counsel by September 20, 2013.  *See* Order of 8/22/13, DE [20].  The briefing schedule was extended several more times on Stair's representation that he was seeking new counsel.  *See* DE [22], [24], [25], [29].   By letter dated February 5, 2013, Stair asked Judge Bianco for permission to appear *pro se*.  DE [30].   A telephone conference was held before Judge Bianco on February 25, 2014 at which time a revised briefing schedule was set.  DE [34].   Ms. Schneiderman, who remained Plaintiff's attorney of record until April 24, 2014, electronically filed affidavits of service of the complaint on Defendants on March 7, 2014.  DE [35], [36], [37]. Stair, acting *pro se*, filed opposition to Defendants' motion on March 21, 2014.  DE [39], [40].

Judge Bianco issued an Order of Recusal on April 8, 2014, and the matter was re-assigned to District Judge Sandra J. Feuerstein.  Judge Feuerstein referred the motion for summary judgment

to the magistrate judge for report and recommendation.[3]  Judge Feuerstein also formally granted

Stair's motion to remove Schneiderman as his attorney of record and allow him to proceed *pro se*.

## DISCUSSION

### I.  Summary Judgment Standards

Fed. R. Civ. P. 56(a) dictates that a "court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  In reviewing a motion for summary judgment, a court must "view the facts

and draw reasonable inferences in the light most favorable to the party opposing the

summary judgment motion."  *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007)

(internal quotation, alteration, and citation omitted).  On a motion for summary judgment, the

moving party bears the initial burden of establishing the absence of any genuine issue of material

fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986);

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  If this burden is satisfied, "the burden

shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."

*Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).  The party opposing summary judgment

"cannot rest on allegations in the pleadings and must point to specific evidence in the record to

carry its burden on summary judgment."  *Id.*; *see also McPherson v. N.Y. City Dep't of Educ.*, 457

F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for

summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001)

("Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must

offer enough evidence to enable a reasonable jury to return a verdict in its favor.").  Summary

---

[3] The motion was originally referred to Magistrate Judge Gary Brown on April 16, 2014.  Judge Brown subsequently issued an Order of Recusal on November 7, 2014, and the case was re-assigned to the undersigned.

judgment must be granted if the non-moving party fails to make a showing sufficient to establish

the existence of an element essential to that party's case and on which that party will bear the

burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

## II.  Statute of Limitations

In a diversity jurisdiction case, "the issue of personal jurisdiction is governed by the law

of the forum state." *Stair v. Calhoun,* No. 07-CV-3906, 2009 WL 792189, at *6 (E.D.N.Y. Mar.

23, 2009) (citing *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir. 2006)); *see also Diffley*

*v. Allied-Signal, Inc.,* 921 F.2d 421, 423 (2d Cir. 1990) ("In diversity cases, state statutes of

limitations govern the timeliness of state law claims, and state law determines the related questions

of what events serve to commence an action and to toll the statute of limitations."(internal

quotations and citations omitted)). In their answers, each of the three Defendants asserted an

affirmative defense that Plaintiff's claims are barred in whole or in part by the statute of limitations,

and their current motion seeks dismissal on that basis.  They argue that the claims are subject to

either three or six year statutes of limitations and that Plaintiff's claims all accrued more than six

years before the complaint was filed.  Plaintiff does not address the specific statutes of limitations

for each of the claims, but rather relies upon the so-called 'savings provision' under New York

law to extend the limitations periods.  *See* N.Y. C.P.L.R. § 205 (McKinney 2008) ("CPLR 205").

As Plaintiff has essentially conceded that the claims are untimely but for the availability of CPLR

205, the Court turns to the applicability of that provision here.

### A.  CPLR 205

Plaintiff argues that the claims are saved by application of CPLR 205.  That statute, titled

"Termination of action," provides in pertinent part as follows:

> (a) New action by plaintiff. If an action is timely commenced and is
> terminated in any other manner than by a voluntary discontinuance, a failure

> to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff. . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period. . .

"[T]he purpose of 205(a) is to save cases otherwise dismissed on curable technicalities—but only when the litigant has *diligently* prosecuted the claim." *Doyle v. Am. Home Prods. Corp.,* 583 F.3d 167, 171 (2d Cir. 2009) (emphasis in original); *see also Hakala v. Deutsche Bank AG,* 343 F.3d 111, 115 (2d Cir. 2003) (the purpose of CPLR 205 "is to avert unintended and capricious unfairness" for allowing reinstitution of a case dismissed for "curable reasons").

B.  Availability to Stair

As a threshold matter, Defendants argue that Stair is not entitled to benefit from CPLR 205 because the prior action was commenced in bad faith.  Defendants' Memorandum of Law, DE [45-1] ("Defs.' Mem"), at 2-6.  Defendants claim that Stair "perjured himself" in federal court, was "found out years later" and was "banished from federal court." *Id.* at 3.

The First Action was ultimately dismissed, five years after it was commenced, because of a lack of subject matter jurisdiction.  Defendants moved to dismiss when they discovered evidence suggesting that Stair was a resident of New York at the time he filed the complaint, and that therefore there was no diversity between the parties.  Judge Bianco granted the motion, and placed his decision on the record on June 18, 2012. *See* Transcript of June 18, 2012 proceeding in CV 07-3906, docketed in CV 12-6121 at [14], at 12 ("Tr. of 7/18/12").   At that time, Judge Bianco made several comments regarding Stair's lack of credibility. *See, e.g.,* Tr. of 7/18/12 at 7 ("I did not find his testimony to be credible in light of the overwhelming documentary evidence"); *id.* at

8

8 ("[t]he records are completely inconsistent with his deposition testimony"); *id.* at 11 (noting the "credible testimony or lack thereof during the trial by Mr. Stair").

Despite these findings, however, Judge Bianco declined Defendants' request to dismiss the case with prejudice. Regarding that request, Judge Bianco stated that

> I don't believe that there is a sufficient basis simply because I found that his testimony [regarding his domicile] was not credible in light of the documentary evidence to establish jurisdiction I don't believe the drastic – that any sanction, no less the drastic sanction of dismissal with prejudice, is warranted. So obviously he can – the dismissal here is for lack of jurisdiction. It was without prejudice to attempting to pursue these claims in State Court if he wishes.

Tr. of 7/18/12 at 12. In light of this finding, the Court determines that there is no reason to deny Plaintiff access to CPLR 205 on the basis of their alleged lack of diligence or bad faith.

C. Application of CPLR 205

To successfully apply CPLR 205, the manner of the termination of the prior action must not fall within one of the exceptions set forth in the statute. Here, Plaintiff's First Action was dismissed for want of subject matter jurisdiction, which is not an enumerated exception. Case law confirms that "New York law expressly tolls the time period when cases have been dismissed from federal court for lack of subject matter jurisdiction." *Gestetner v. Congregation Merkaz,* No. 07 Civ. 116, 2004 WL 602786, at *4 n.3 (S.D.N.Y. Mar. 29, 2004) (citing C.P.L.R. 205(a) Practice Comm. 1993); *see also Diffley,* 921 F.2d at 424 (noting that it is "well settled in New York that dismissal of an action for lack of subject matter jurisdiction may be one of the bases for invoking § 205(a)"). Thus, use of CPLR 205 is not barred by the manner in which the First Action was terminated.

For CPLR 205(a) to apply, the subsequent action must also have been commenced within six months of the termination of the prior action and Defendants served within the same time

period.  For the purposes of CPLR 205, "'termination' of the prior action occurs when appeals as of right are exhausted." *Andrea v. Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C.,* 5 N.Y.3d 514, 519, 806 N.Y.S.2d 453, 455 (2005).  Plaintiff did not appeal the decision in the First Action, and thus the six-month period under CPLR 205 began to run when his rights were finally adjudicated in the First Action, *i.e.,* the date of the judgment.  In federal court, judgment is made effective at the date of entry.  *See Hill v. Hawes,* 320 U.S. 520, 521, 64 S. Ct. 334, 335 (1944) (citing Fed. R. Civ. P. 79(a)); *see also Cannellas ex rel. Estate of DiGiacomo v. Lentz,* 396 F. Supp. 2d 435, 438 (S.D.N.Y. 2005) (noting that federal orders are "entered by the clerk of the court after they are signed" and that a matter is terminated within the meaning of CPLR 205 on the date of entry); *Franklin Nursing Home v. Axelrod,* 148 Misc.2d 556, 559, 560 N.Y.S.2d 924, 925-26 (N.Y. Sup. Ct. 1990) (finding the termination point in the earlier, federal action to be entry of judgment, not the date the judge issued a memorandum decision).[4]

Defendants here argue that the appropriate termination date was June 18, 2012, the day that Judge Bianco placed the decision granting the motion to dismiss on the record, and that as a result, December 18, 2012 would be the deadline for commencing the current action and serving Defendants.  The Court disagrees and finds that the correct termination date is July 10, 2012, the date judgment was entered.[5]  Accordingly, this action had to be commenced, and service upon

---

[4] There is some suggestion that the applicable termination date is the date of entry of the order of dismissal. *See Cook v. Deloitte & Touche USA, LLP,* 13 Misc. 3d 1203 (A) 824 N.Y.S.2d 753 (Table) (noting that "the date of entry of the dismissal order has been determined to be the controlling date for section 205(a) purposes" (citations omitted)).  The action would still be timely utilizing this alternative approach, as the operative termination date would be July 5, 2012.

[5] The cases cited by Defendants are distinguishable as they stand for the premise that the six-months should not be calculated from the date of *service* with notice of entry of the judgment in the earlier action, a situation not presented in the current case. *See Pi Ju Tang v. St. Francis Hosp.,* 37 A.D.3d 690, 830 N.Y.S.2d 311 (2d Dep't 2007); *Burns v. Pace Univ.,* 25 A.D.3d 334, 809 N.Y.S.2d 3 (1st Dep't 2006).

Defendants completed, by January 10, 2013.  The complaint in this case was filed on December

13, 2012 and thus was timely filed under CPLR 205.

Regarding the service requirement, Plaintiff has provided affidavits of service of the

complaint on all three Defendants.  According to those affidavits, Defendant Hanrahan was

personally served on December 15, 2012, DE [37], Defendant Calhoun was served on December

18, 2012 by service on a person of suitable age and discretion at his residence and subsequent

mailing to Calhoun's residence, DE [36], and Defendant Parella was served on December 18, 2012

by service on a person of suitable age and discretion at his place of business and subsequent

mailing to Parella's place of business. DE [36].  On their faces, these affidavits establish that

Defendants were each served prior to January 5, 2013 and therefore CPLR 205 was satisfied.

Accordingly, Defendants' statute of limitations argument fails and the Court recommends that

summary judgment on statute of limitations grounds be denied.

## III.  Insufficiency of Service of Process

### A.  Service on Defendants

Defendants Calhoun and Parella argue that even if CPLR 205 is available to extend the

statute of limitations in this case, they were not properly served with the complaint within six-

months as required.  Thus, they challenge the sufficiency of the service upon them.  Pursuant to

Rule 12(b), a defense of insufficient service of process must be asserted either in a responsive

pleading, or in a motion made before a responsive pleading is filed.  Fed. R. Civ. P. 12(b).  The

defense is waived where it is not either adequately raised in an answer, or asserted in a pre-answer

motion.  *See Santos v. State Farm Fire & Cas. Co.,* 902 F.2d 1092, 1095-96 (2d Cir. 1990); *U.S.*

*v. Pelt,* No. 11-cv-06156, 2013 WL 1173898, at *4 (E.D.N.Y. Mar. 18, 2013); *see also Cobalt*

*Multifamily Investors I, LLC v. Arden,* No. 06 Civ. 6172, 2013 WL 5780810, at *2 (S.D.N.Y. Oct.

24, 2013) (noting that "filing an answer without an assertion of improper service and before any other motion waives that defense").

All three Defendants filed answers in January 2013 and did not make any motion prior to those filings. Accordingly, a defense of insufficient service of process had to have been raised in those answers to be preserved. As Defendant Parella did not claim insufficient service of process in his answer, he has waived the defense.[6] Defendant Hanrahan also did not raise the defense in his answer, nor has he suggested that service upon him was insufficient. Accordingly, because all requirements of CPLR 205 have been satisfied as to Defendants Parella and Hanrahan, it is recommended that their motion for summary judgment on this alternative ground be denied.

Unlike his co-Defendants, Defendant Calhoun did raise the defense of insufficient service in his answer and thus further analysis is required. Inclusion of the defense in his answer preserved the defense under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 12(b) & (h)(1), but raising a defense in a responsive pleading does not "preserve the defense in perpetuity." *Hamilton v. A C and S, Inc.,* No. 94 Civ. 4397, 1998 WL 651049, at *2 (S.D.N.Y. Sept. 23, 1998). A defense must be made "in a reasonably timely manner or it is waived." *Burton v. N. Dutchess Hosp*., 106 F.R.D. 477, 481 (S.D.N.Y. 1985) (citations omitted). Although there is no set time frame in which a defendant must move after preserving a defense, the motion to dismiss should be made "at the earliest possible opportunity." *Id*.

Here, the answers were filed in January 2013, Defendants filed a letter seeking a premotion conference for a motion for summary judgment on June 5, 2013, and they filed the motion on July

---

[6] Although Parella did raise a statute of limitations defense in his answer, this is a separate defense from insufficient service of process. Statute of limitations is an affirmative defense that must be stated in a responsive pleading, *see* FED. R. CIV. P. 8(c), while insufficient service of process may be asserted in either a responsive pleading or a pre-answer motion. *See* FED. R. CIV. P. 12(b).

8, 2013.  Under these circumstances, the Court finds Calhoun's motion to be timely asserted.   As

the motion is timely, the Court turns to Calhoun's argument that he was not properly served.

The Federal Rules of Civil Procedure provide for service on an individual in several ways

including leaving a copy of the summons and complaint "at the individual's dwelling or usual

place of abode with someone of suitable age and discretion who resides there."  FED. R. CIV. P.

4(e)(2)(B).  Service may also be completed by complying with the service rules under state law.

FED. R. CIV. P. 4(e)(1).  New York law provides in part that service may be effectuated by

delivering the summons "to a person of suitable age and discretion at the actual . . . dwelling place

or usual place of abode of the person to be served and by . . . mailing the summons to the person

to be served at his or her last known residence." CPLR 308(2).  The Affidavit of Service pertaining

to Calhoun indicates that service was made upon a person of suitable age and discretion at his

residence, with a subsequent mailing of a copy to his home address.  If properly performed, such

service would be sufficient.

The affidavit of service provided by Plaintiff states that process server Joseph Rabus served

a person of suitable age and discretion on December 18, 2012 at 45 Maple Street, Garden City,

New York, and subsequently mailed a copy of the complaint to the same address.  Affidavit of

Service on Calhoun ("Calhoun AOS"), DE [36].  There is some difference in interpretation of the

handwritten name of the person served as it has been deciphered as either "Jason Economy" or

"'Jane' Economy."[7]  As part of his motion papers, Calhoun submitted an affidavit that does not

dispute that his address is 45 Maple Street, but states that he never received the complaint in the

---

[7] All the parties particularly focused on the Calhoun AOS's facial discrepancies regarding the name and
gender of the person served.  Upon review of the evidence, the Court notes that a likely explanation is that the process
server did not catch Mrs. Econome's first name and chose to record her name as "Jane" (as in "Jane Doe") Econome.
The Court notes that Mrs. Econome generally fits the physical description set forth on the Calhoun AOS.  As will be
discussed below, however, this issue is not determinative of whether service was sufficient.

mail.  Calhoun Affidavit in Rebuttal ("Calhoun Aff."), DE [46].  Calhoun also provided an affidavit from his across the street neighbor at 42 Maple Street, Bea Econome, in which she states that a man gave her an envelope to give to Calhoun on December 23, 2012.  Affidavit of Bea Econome, DE [46].  Calhoun's affidavit further states that to his knowledge, neither Bea nor her son, Jason, has ever been into his home, and neither has access or authority to enter his home. Calhoun Aff. at ¶8(c).

In light of the issues raised by Calhoun in his motion papers, the Court conducted a traverse hearing on February 2, 2015.  Plaintiff Stair appeared with several documentary submissions, but no witnesses.  Significantly, Plaintiff's process server, Joseph Rabus, did not appear.  Although Plaintiff attempted to introduce a handwritten, unsworn statement from Rabus that he had followed New York law, the Court sustained Defendant Calhoun's objection and did not accept it into evidence.  Stair was sworn and subject to cross-examination.  He largely testified about the issues he had with his former counsel, and had no personal knowledge concerning service of process.

Defendant Calhoun called three witnesses, Jason Econome, Bea Econome, and Defendant Parella, and finally, Calhoun took the witness stand himself.  Jason Econome testified that he never received any documents or an envelope for Calhoun.  Transcript of Hearing ("Hrg"), 2/2/2015 at 38.  Bea Econome testified that she has a problem walking, and that "two, three days" before Christmas, a man came to her door.  Id. at 40, 42-43.  She answered the door herself, and the man asked if he could leave an envelope for Calhoun.  Id. at 42.  A few days after the New Year, she had her nurse's aide deliver the envelope across the street.  Id. at 42-43.  Calhoun testified that he found the envelope on his doorstep on or about January 5th or 6th, and that he never received a copy of the complaint by mail.  Id. at 53.  Stair prevented no evidence to dispute the testimony of these witnesses.

"When a defendant challenges service of process, the burden of proof is on the plaintiff to show the adequacy of service." *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).  The Court finds that Plaintiff has not carried this burden and that it is unquestionable that Defendant Calhoun was not properly served with the complaint.  The uncontroverted testimony is that Bea Econome lives across the street from Calhoun and that she received the complaint in <u>her</u> home, not Calhoun's.  Accordingly, service was insufficient under either CPLR 308(b) or Rule 4 of the Federal Rules.[8]  *See Fed. Home Loan Mortg. Corp. v. 666 St. Nicholas Assocs.,* No. 94 Civ. 4537, 1995 WL 628998, at *3 (S.D.N.Y. Oct. 25, 1995) (even in an apartment building "[s]ervice on  a neighbor, as a general matter, will not satisfy" CPLR 308(2)).

In reply, Plaintiff repeatedly noted that Defendants must have had copies of the Complaint since they filed their answers in early January, suggesting that this should be sufficient to establish service.  This argument is unavailing as "[a]ctual notice alone will not sustain the service or subject a person to the court's jurisdiction when there has not been compliance with prescribed conditions of service." *Buggs v. Ehrnschwender,* 968 F.2d 1544, 1548 (2d Cir. 1992) (quoting *Markoff v. S. Nassau Cmty. Hosp.*, 61 N.Y.2d 283, 288, 473 N.Y.S.2d 766, 768 (1984)); *see also McKibben v. Credit Lyonnais,* No. 98 Civ. 3358, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) (noting that "[i]t is an established concept of law that actual notice is not curative of faulty service of process").

---

[8] In light of this finding, the Court declines to examine the myriad issues with the Calhoun AOS such as:  (1) the discrepancy between the date on the Calhoun AOS (December 18, 2012) and the testimony of Bea Econome that she received it "2 or 3 days before Christmas; (2) whether the Calhoun AOS indicates service on Jason or "Jane" Econome; (3) the discrepancy between the name of the process server on the Calhoun AOS (Joseph Rabus) and Plaintiffs' counsel's statement in a letter that the process server was "Lenny," Schneiderman Ltr of 3/5/14, DE [38-1]; (4) Calhoun's testimony that he never received a copy by mail contrary to the indication made on the Calhoun AOS,  Hrg. at 59; and (5) the delay between the alleged service in December 2012 and the filing of the Affidavits of Service in March 2014 after Schneiderman was able to provide them.

B.  Plaintiff's request to excuse late service

In the event that the Court finds that there was insufficient service, Stair requests that the Court excuse the lateness on various grounds including his diligence and the "Interest of Justice." *See* Pls.' Opp. at 15.  He provides no legal support for this argument. Rule 4 of the Federal Rules of Civil Procedure, however, allows the Court to, upon a showing of good cause, extend the time for service "for an appropriate period."  FED. R. CIV. P. 4(m).[9]  The party seeking an extension for good cause "bears a heavy burden of proof." *Alvarado,* 2005 WL 1467893, at *5.  Generally, good cause is only found in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *E. Refractories Co. v. Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 505 (S.D.N.Y. 1999) (citation and internal quotation omitted).

Significantly, "[a]n attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause for the purposes of Rule 4(m)." *Gurvey v. Cowan, Liebowitz & Latman, P.C.,* No. 06 Civ. 1202, 2013 WL 3940858, at *3 (S.D.N.Y. July 31, 2013) (quotation and citations omitted), adopted by 2013 WL 4437190 (S.D.N.Y. Aug. 19, 2013).  Accordingly, crediting Stair's evidence that his attorney, Ms. Schneiderman, made various assertions to him regarding service that may not have been truthful does not mandate a finding of good cause under Rule 4(m).  As one court noted "even if plaintiff's former attorneys had falsely represented to her that the moving defendants had, in fact, been served, this would not constitute good cause for her failure to effect service." *Id.*

---

[9] "In a diversity action, Rule 4(m) of the Federal Rules of Civil Procedure governs any extension of the limitations period for a plaintiff's claim." *Alvarado v. Am. Freightways, Inc.,* No. Civ. 9536, 2005 WL 1467893, at *5 (S.D.N.Y. June 21, 2005).

Nevertheless, even in the absence of good cause, courts may exercise discretion and grant an extension of time to effect service. *See Zapata v. City of N.Y.,* 502 F.3d 192, 196 (2d Cir. 2007); *Gurvey,* 2013 WL 3940858, at *3; *see also Gerena v. Korb,* 617 F.3d 197, 201 (2d Cir. 2010) (Rule 4(m) gives "wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause").

"Courts have typically weighed four factors in determining whether to grant an extension of time absent good cause: (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Purzak v. Long Island Hous. Servs., Inc.,* Nos. 12-cv-1747, 12-cv-4010, 2013 WL 5202711, at *5 (E.D.N.Y. Sept. 13, 2013) (citation and internal quotation marks omitted). The statute of limitations will have expired against Calhoun if the case is dismissed and Calhoun did have actual notice of the claims. Thus the first two factors favor a further extension. The remaining factors inure to Calhoun's benefit, however, as he did not conceal the defective service and he will certainly be prejudiced by granting an extension. Ultimately, it is up to the district court "to decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service." *Zapata,* 502 F.3d at 198.

Upon a review of the entire record, the Court recommends that there be no exercise of its discretion in this case to extend Plaintiff's time to serve. Although Calhoun filed an answer asserting the defense in January 2013, Plaintiff, who was at that time represented by counsel, did not attempt to cure the defect, nor did he ask the Court for an extension of time to re-serve for over

17

fifteen months.  In addition, the materials submitted by Stair in opposition to this motion establish

that he was not only aware of, but was acutely concerned about, proper service of process on

Defendants.  *See, e.g.,* Stair to Schneiderman, E-mail of 11/26/12, DE [30] ("you assured me the

case was filed and the defendants served.  Well three departments, the docket clerk, case opening

clerk and the pro se department said you did not such thing."); Stair to Schneiderman, E-mail of

12/16/13, DE [30] ("The defendants have stated you failed to serve them properly and within the

6 month time period thereby the case must be dismissed").  The motion at issue here was filed on

July 8, 2013 and clearly lays out the deficiencies in service.  In the ensuing seven months, Stair

wrote to Judge Bianco on five occasions, but did not once request an opportunity to re-serve

Defendants.  *See* DE [18], [21], [23], [27], [30].   Finally, Plaintiff has already had the benefit of

the six-month extension "savings provision" under CPLR 205.  Under such circumstances and in

the face of Plaintiff's decided lack of diligence, it is recommended that Plaintiff's belated attempt

to re-serve Defendant Calhoun be denied.

## IV.  Other arguments

Plaintiff summarily claims that service of the complaint on Hanrahan "as a member of

Sirius is effective service upon all of the Sirius Defendants, Calhoun, Hanrahan, Parella and

Gilbert."  Pls.' Opp. at 14.  Plaintiff seem to be relying in part on earlier Court decisions that, for

the ease of discussion, defined the individuals as the "Sirius Defendants."  *See e.g., Stair v.*

*Calhoun,* No. 07-CV-03906, 2009 WL 792189 (E.D.N.Y. Mar. 23, 2009).  The use of a defined

term for a group of defendants for the purpose of analysis does not confer a relationship or status

where none in reality exists.  The complaint here clearly names the Defendants as individuals, and

the Plaintiff has provided no cogent argument or legal support for finding otherwise.

## CONCLUSION

For the reasons set forth herein, the Court recommends that the summary judgment motion be denied as to Defendants Parella and Hanrahan, and granted as to Defendant Calhoun due to insufficient service of process.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to all parties by electronic filing and by mailing.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service.  Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy.  *See* FED. R. CIV. P. 6(a), 6(e), 72.  A courtesy copy of any objections filed is to be sent to the Chambers of the District Judge.  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 474-75 (1985); *Caidor v. Onondaga Cnty.,* 517 F.3d 601, 604 (2d Cir. 2008); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.1997).

Dated: Central Islip, New York
　　　February 9, 2015

　　　　　　　　　　　　　　　　　　　　　　　 s/ Steven I. Locke
　　　　　　　　　　　　　　　　　　　　　　　STEVEN I. LOCKE
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge